UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-134 |
| v. | * | SECTION: M |
| DEVERICK MORROW | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant **DEVERICK MORROW** ("**MORROW**") stipulate and agree that the below facts are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and **MORROW** further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that **MORROW**, not being lawfully entitled a certificate, license, and document issued to officers and seamen by any officer and employee of the United States authorized by law to issue the same, did receive and possess said certificate, license, and document, with intent unlawfully to use said certificate, license, and document, in violation of Title 18, United States Code, Section 2197. The below facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or **MORROW**'s complete knowledge of the offense.

A.   **At all times relevant herein:**

Federal statutes and regulations ("federal law") authorized the United States Coast Guard ("USCG") to issue merchant mariner credentials ("MMCs") and related endorsements. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 gross registered tonnage, with a few limited exceptions, were required to have valid MMCs. Furthermore, to serve in various positions, federal law required mariners to have particular



AUSA CM
Defendant DTM
Defense Counsel

endorsements added to their MMCs. Consequently, an MMC and each endorsement to an MMC each constituted a "certificate, license, or document," as described in Title 18, United States Code, Section 2197.

Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and that he had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which he lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which he lacked the required endorsement.

In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States. For many endorsements, federal law required mariners to pass USCG-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at USCG regional exam centers. One such regional exam center, known as REC New Orleans, was located in the Eastern District of Louisiana. USCG employees at the regional exam centers entered the scores into a computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

**B.    MORROW received, possessed, and intended to use endorsements to which he was not lawfully entitled**

**MORROW** was a mariner who sought to add what is known as a Third Assistant Engineer endorsement to his MMC. As **MORROW** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center.



AUSA _CM_
Defendant _DIM_
Defense Counsel _SW_

Mariner-1 was a mariner known to **MORROW**. Mariner-1 informed **MORROW** that Mariner-1 could, in exchange for money, arrange for mariners to receive false passing examination scores at REC New Orleans.

Prior to June 20, 2016, **MORROW** formed an agreement with Mariner-1 to pay Mariner-1 a sum of money in exchange for Mariner-1 arranging for a USCG employee at REC New Orleans to falsely report that **MORROW** had passed the examination required for a Third Assistant Engineer endorsement. Pursuant to this agreement, **MORROW** paid Mariner-1 a sum of money.

As a result of **MORROW**'s conduct, on or about June 20, 2016 and June 21, 2016, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **MORROW** had passed the examination associated with his application for a Third Assistant Engineer endorsement. As **MORROW** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **MORROW** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **MORROW** so intentionally causing the USCG examiner to make this false entry, the USCG issued **MORROW** a Third Assistant Engineer endorsement.

The aforementioned endorsement, to which **MORROW** was not lawfully entitled, authorized **MORROW** to, among other things, serve as third assistant engineer of vessels of any horsepower in any waters. The third assistant engineer on a vessel holds an officer-level position in the engine department. The third assistant engineer typically is responsible for, among other things, keeping watch of the engine room, and overseeing generators, the sewage system, and lube oil purifier.

3



AUSA _CM_
Defendant _DJM_
Defense Counsel _SV_

From on or about June 20, 2016 through on or about February 2, 2020, in the Eastern District of Louisiana and elsewhere, **MORROW**, received and possessed the above-referenced endorsement and an MMC containing said endorsements, knowing that he was not lawfully entitled to them and with the intent to unlawfully use them.

_____   1/14/2021
CHANDRA MENON                    Date
Assistant United States Attorney

_____   1-19-2021
SAM WINSTON                      Date
Counsel for Defendant

_____   1-14-2021
DEVERICK MORROW                  Date
Defendant